**DI IORIO v. NICOLLS, District Director of Immigration and Naturalization.**

No. 4473.

United States Court of Appeals
First Circuit.

June 9, 1950.

Ralph F. Martino, Boston, Mass., for appellant.

Edward A. Counihan, III, Asst. U. S. Atty., Boston, Mass. (George F. Garrity, U. S. Atty., Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

Pietro Antonio Di Iorio has taken this appeal from an order of the District Court denying his petition for naturalization filed under the special provisions of § 317(c) of the Nationality Act of 1940, 54 Stat. 1147, 8 U.S.C.A. § 717(c).

It appears that appellant's father, an Italian by birth, had been naturalized as a citizen of the United States on November 10, 1919, and had later returned to Italy. Appellant was born in Italy on January 2, 1922. At the date of appellant's birth, his father was still a naturalized citizen, not having yet lost such citizenship under the Expatriation Act of March 2, 1907, 34 Stat. 1228, by two years' residence "in the foreign state from which he came". Therefore appellant, though born in Italy, acquired United States citizenship as a birth-

right, under the then applicable provisions of R.S. § 1993 (1878).[1]

On February 13, 1943, appellant was inducted into the Italian army, being then just over twenty-one years of age, and he served therein until May, 1943, when he was released to continue his studies at medical school. In an Agreed Statement of Facts submitted to the court below by counsel for petitioner and for the government, the following is recited: "The petitioner had dual citizenship at the time of his induction into the Italian Army. Accordingly, he lost his United States nationality pursuant to the provisions of Section 401(c) of the Nationality Act of 1940.

"It is agreed that the petitioner served voluntarily in the Italian Army within the provisions of Section 401(c)."[2]

By the above stipulation, certain other possibilities were excluded from consideration, viz., if Di Iorio had been drafted into the Italian army involuntarily, then under our decision in Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 1947, 161 F.2d 860, he would not thereby have lost his United States nationality under § 401(c) of the Nationality Act of 1940. In that event appellant would still have been a United States citizen, unless, having reached the age of twenty-three without having acquired permanent residence in the United States, he had then lost his American nationality under § 407 of the Nationality Act of 1940, 8 U.S.C.A. § 807, through loss of American nationality by his father under § 404(a) of the same Act, 8 U.S.C.A. § 804(a); in either such case, of course, a petition for naturalization under § 317(c) could not have been entertained.

Section 317(c) of the Nationality Act, under which appellant's petition for naturalization was filed, affords a simplified and accelerated naturalization procedure under which a person may reacquire United States citizenship which he lost under § 401 (c) of the Act by entering the armed forces of a foreign state. Subsection (c) of § 317 reads as follows: "(c) A person who shall have been a citizen of the United States and also a national of a foreign state, and who shall have lost his citizenship of the United States under the provisions of section 401(c) of this Act, shall be entitled to the benefits of the provisions of subsection (a) of this section, except that contained in subdivision (2) thereof. Such person, if abroad, may enter the United States as a nonquota immigrant, for the purpose of recovering his citizenship, upon compliance with the provisions of the Immigration Acts of 1917 and 1924."

Subsection (a), thus incorporated by reference, provides a special naturalization procedure for persons who lost United States citizenship prior to September 22, 1922, by marriage to an alien or by the spouse's loss of United States citizenship, and for persons who lost United States citizenship on or after September 22, 1922, by marriage to an alien ineligible for citizenship. The "benefits of the provisions of subsection (a)", made applicable by subsection (c) to persons who lost their citizenship under § 401(c), are these:

"(1) No declaration of intention and no certificate of arrival shall be required, and no period of residence within the United States or within the State where the petition is filed shall be required.

2. "Sec. 401. A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

\* \* \* \* \* \*

(c) Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state". 54 Stat. 1168–1169, 8 U.S.C.A. § 801(c).

838

(2) *  *  *[3]

(3) The petition may be filed in any court having naturalization jurisdiction, regardless of the residence of the petitioner.

(4) The petition may be heard at any time after filing if there is attached to the petition at the time of filing a certificate from a naturalization examiner stating that the petitioner has appeared before such examiner for examination."

In his petition for naturalization appellant stated: "My lawful entry for permanent residence in the United States was at Boston, Mass. under the name of Pietro Antonio Di Iorio on May 3, 1948 via plane." However, the fact was, as appellant conceded in the Agreed Statement of Facts, that on May 3, 1948, when he entered this country for the first time in his life, he did not come in for permanent residence as a quota or nonquota immigrant but rather as a visitor on a visa issued by the American consul at Naples, Italy, under §§ 3 and 15 of the Immigration Act of 1924, 43 Stat. 153, 8 U.S.C.A. §§ 203, 215, which do not authorize an entry for permanent residence. The Agreed Statement of Facts recited that the petition for naturalization contains allegations "which appear to have been established" and would entitle petitioner "to the exemptions contained in Section 317(c) of the Nationality Act of 1940 provided it is determined that he does not need a legal entry for permanent residence"; and therefore the stipulation presented to the court below the single question "whether the petitioner is entitled to the exemptions contained in Section 317(c) of the Nationality Act of 1940 in view of his admission as a visitor for a temporary period." This question, which is the only one discussed in the

District Court's Memorandum of Decision, was answered by that court in the negative.

▋ Section 317(a) does not in express terms waive the requirement that entry for permanent residence must be established, a requirement imposed by the Nationality Act on applicants for naturalization under ordinary circumstances, as appears in §§ 332 (a) (11), 332(a) (20), 332(c), 329, and 331(11), 8 U.S.C.A. §§ 732(a) (11, 20), (c), 729, 731(11). It is to be noted, however, that although, as provided in § 329(b), no declaration of intention may be made by any person "until such person's lawful entry for permanent residence shall have been established, and a certificate showing the date, place, and manner of arrival in the United States shall have been issued", nevertheless entry for permanent residence is not otherwise separately made a condition precedent to naturalization; rather, the condition is imposed, in a manner which could not ordinarily give rise to doubt, by the requirement of §§ 332(a) (11), 332(a) (20), and 332(c), that a certificate of arrival *showing* entry for permanent residence must accompany the normal petition for naturalization. See United States v. Ness, 1917, 245 U.S. 319, 322, 324, 38 S.Ct. 118, 62 L.Ed. 321. It is therefore not unreasonable to infer that when Congress in § 317 dispensed with the necessity of filing a declaration of intention, and of presenting a certificate of arrival which must in the ordinary case be produced in order to establish lawful entry for permanent residence, it thereby indicated that entry for permanent residence was not a prerequisite to naturalization of applicants in the special categories covered by subsections (a) and (c) of § 317.

3. Subdivision (2) of § 317(a) provides: "The petition need not set forth that it is the intention of the petitioner to reside permanently within the United States." In view of the exception contained in § 317(c), this dispensation is not made applicable to petitioners for naturalization who lost their American citizenship pursuant to § 401(c). The fact that such a petitioner for naturalization is required by § 332(a) (18), 8 U. S.C.A. § 732(a) (18), to declare his

"intention in good faith to become a citizen of the United States, and to reside permanently therein", is in no way inconsistent with the conclusion that we have reached below that such petitioner need not have made a legal entry into the United States for permanent residence as a quota or a nonquota immigrant, but may avail himself of the provisions of § 317(c) upon lawful entry on a visitor's visa.

Some emphasis is placed by the government upon the concluding sentence of § 317 (c): "Such person, if abroad, may enter the United States as a nonquota immigrant, for the purpose of recovering his citizenship, upon compliance with the provisions of the Immigration Acts of 1917 and 1924." This sentence presupposes, the government says, that the applicant for naturalization must establish lawful entry for permanent residence, and merely offers him a more speedy and convenient alternative method of accomplishing such entry for permanent residence; that is to say, he is permitted to come in for permanent residence as a nonquota immigrant, instead of being assigned a quota number and having to wait his turn as in the case of ordinary aliens. It is argued that the provision of § 317(c) permitting entry as a nonquota immigrant would have conferred no real boon, would have been an empty and meaningless gesture, if it be assumed that aliens of the category here involved need not come in as immigrants at all, but may avail themselves of the simplified naturalization procedure under § 317 merely by entry for a temporary period on a visitor's visa.

The weakness of the foregoing argument is that a person entering as a nonquota immigrant is relieved of certain restrictions and disadvantages applicable to one entering on a visitor's visa; and therefore the provision of § 317(c) allowing (but not requiring) entry as a nonquota immigrant is not an empty and meaningless one, even though the statute is read as permitting a person, otherwise qualified, to be naturalized under the simplified procedure of § 317 upon lawful entry on a visitor's visa. Under § 15 of the Immigration Act of 1924, as amended, 8 U.S.C.A. § 215, admission as a visitor "shall be for such time and under such conditions as may be by regulations prescribed * * *." The regulations (8 C.F.R. § 119. et seq.) permit entry by the visitor for "whatever period is appropriate to accomplish the purpose of his temporary stay in the United States", provided that "the period shall not in any case exceed six months". (§ 119.2) Moreover, a visitor may not, while in the United States, "pursue any employment not specifically author-ized by immigration officials"; he must agree to leave the United States within the period of his admission or any authorized extension thereof, and establish that he "has the ability to leave"; he may be required to furnish a bond "in a sum of not less than $500 to insure that he will depart from the United States at the expiration of his specific period of authorized stay or upon failure to comply with the conditions under which admitted"; and he is required to report his whereabouts to the Commissioner at three months' intervals. (§ 119.3) Provision is made in § 119.4 for extensions of the period of stay by administrative action, subject to prescribed conditions.

An applicant for a visitor's visa must pass the same scrutiny of the consul as to his mental and physical soundness, his moral acceptability, his political beliefs and affiliations, as if he had sought to enter as a nonquota immigrant. (8 U.S.C.A. §§ 136, 137) A person who lost his American citizenship under § 401(c) of the Nationality Act and who satisfied the consul of his eligibility to receive a visitor's visa could, by the same token, have established his eligibility for a visa as a nonquota immigrant. Appellant has made a lawful entry into the country; and the only effect of the interpretation of the law urged by the government would be to require him to go back to Italy, obtain a visa as a nonquota immigrant (to which he would be entitled under § 317 (c)), and then return to this country as such immigrant in order to regain his citizenship. So far as we can see such interpretation of the law would serve no substantial objective of public policy.

If the point may be deemed doubtful on the face of the statute, any possible doubts are removed by reference to the legislative history.

It is important to trace back the origin of what is now § 317(a) of the Nationality Act of 1940, for the provision in § 317(a) dispensing with the requirements of a declaration of intention and a certificate of arrival has been incorporated by reference in § 317(c) and thereby made applicable to persons who lost their citizenship under § 401(c). We may start with the Expatria-

tion Act of March 2, 1907, 34 Stat. 1228, which provided that any American woman who married a foreigner should take the nationality of her husband. The Cable Act of September 22, 1922, 42 Stat. 1021, provided (in § 4) an accelerated procedure whereby women who had lost their citizenship under the 1907 Act might regain their citizenship by naturalization; a one-year period of residence would suffice, and the requirement of a declaration of intention was dispensed with. But the Cable Act did not dispense with the requirement of entry for permanent residence. Nor did this Act eliminate the requirement of a certificate of arrival which evidenced such entry for permanent residence, except in the case covered by the proviso that "no certificate of arrival shall be required to be filed with her petition if during the continuance of the marital status she shall have resided within the United States." The language of this proviso shows that, in thus dispensing with the certificate of arrival requirement, Congress was in effect dispensing with the requirement of *entry* for permanent residence. With the enactment of the strict quota provisions of the Immigration Act of 1924, 43 Stat. 153, the remedial provisions of the Cable Act lost much of their efficacy, for a woman who had lost her American citizenship under the Act of 1907 by marriage to a foreigner and who had gone abroad could not get back into this country to regain her American citizenship except as a quota immigrant for permanent residence. To alleviate this situation somewhat Congress passed the Act of May. 29, 1928, 45 Stat. 1009, amending § 4 of the Immigration Act of 1924 so as to permit such a woman to enter the country as a nonquota immigrant, provided she was unmarried at the time of applying for an immigration visa—a limitation which was removed by further amendment of § 4(f) of the Immigration Act of 1924 by § 3 of the Act of July 3, 1930, 46 Stat. 854. Section 4(f), as amended, now appears in 8 U.S.C.A. § 204(f).

Despite the fact that women in this category had thus been given the facility of entering the United States as nonquota immigrants in order to regain their citizenship, Congress was still not satisfied that "every possible impediment" to repatriation of expatriated American women had been removed. See 72 Cong.Rec. 7364. Accordingly, in § 2 of the Act of July 3, 1930, 46 Stat. 854, Congress amended § 4 of the Cable Act of 1922, so as further to simplify the reacquisition of United States nationality by such expatriated American women. The most important provision of this amendment was in § 4(a) (1), reading: "No declaration of intention and no certificate of arrival shall be required, and no period of residence within the United States or within the county where the petition is filed shall be required". It is clear from the report of the House Committee on Immigration that in thus amending the Cable Act it was intended to repeal the one-year residence requirement and to dispense with the requirement of entry for permanent residence. See H.R.Rep. No. 1036 on H.R. 10960, 71st Cong., 2d Sess., pp. 1-3 (1930). In the Senate, Senator Jones asked for the views of the Secretary of Labor, the Cabinet officer in charge of administering the immigration laws. He received a reply from the Acting Secretary of Labor, which was printed in 72 Cong.Rec. 10864. Commenting on § 2 of the bill, the Acting Secretary said: "This section proposes to amend section 4 of the act of September 22, 1922 [the Cable Act], which now provides that a woman who before the passage of that act lost her United States citizenship by reason of marriage to an alien may be naturalized in the United States after a 1-year period of residence following permanent admission and without necessity for making the usual declaration of intention. * * * [It] is proposed to eliminate the element of time and *also that of admission for permanent residence, so that in effect such a woman might enter the United States for a temporary visit, have her citizenship restored without delay,* and immediately resume residence in a foreign country as a United States citizen." (Italics added.)

The mode chosen by Congress in 1930 to eliminate the requirement of entry for permanent residence, in the case of this class of women-petitioners for naturalization, was to dispense with the requirement of presenting a certificate of arrival which, as

we have seen, is necessary to establish lawful entry for permanent residence in the ordinary naturalization case.

There remains for consideration the legislative history of the Nationality Act of 1940. As we noted in Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 1947, 161 F.2d 860, 863, the draft of that Act, which in the main was a codification of prior legislation, originated in the executive branch rather than in the Congress. On June 13, 1938, the President transmitted to Congress the report of his Cabinet Committee accompanied by a Draft Code and explanatory comments. Proposed § 316(a) of this draft was, as explained by the Cabinet Committee, "substantially a continuance of that portion of the Cable Act of 1922, as amended, which provided for the expeditious reacquisition of previous citizenship status by certain former United States citizens." This proposed § 316(a) became § 317(a) of the bill as it passed the House, with no discussion—since it was not a controversial section; and the bill was ultimately enacted with § 317(a) unchanged.

█ In the absence of anything in the legislative history of the Nationality Act of 1940 indicating a contrary intention, we think it should be presumed that, when Congress carried over into § 317(a) and re-enacted verbatim language derived from § 4(a) of the Cable Act as amended in 1930, it intended that language to bear its engrafted meaning. We have found no such contrary indication in the legislative history. The District Court refers to a colloquy when the bill was before the House in which Mr. Jenkins remarked that "in order to have the right to be naturalized at all, a man must always be able to prove lawful entry." But "lawful entry" is one thing, and "lawful entry for permanent residence" quite another. Furthermore, Mr. Jenkins at that point was talking about § 307(d), dealing with the residence requirement as applied to certain alien seamen; he was not referring to § 317 at all. See 86 Cong.Rec. 11964, 11965. Also he could not have had in mind the problem now before us under § 317(c), affording to persons who had lost their citizenship under § 401(c) the sim-plified naturalization procedure set forth in § 317(a), for § 317(c) was not then in the bill. This subsection (c) was put in the bill by amendment in the Senate, with no explanation of its purpose either in the Senate Committee report or on the floor of the Senate. See 1 Cir., 161 F.2d supra at page 865. The amendment was accepted in conference. When the conference report was before the House, no discussion of present pertinence took place with reference to § 317(c). See 86 Cong.Rec. 13244-13247.

From the foregoing review, we think it must be concluded that, § 317(a) (1) having dispensed with the requirements of a declaration of intention and of a certificate of arrival, women otherwise entitled to the benefits of § 317(a) need not enter as quota or nonquota immigrants for permanent residence but may come in on a visitor's visa; and the same is true of persons who lost their citizenship under § 401(c) by voluntary service in the armed forces of a foreign state, and who in reacquiring American nationality are by § 317(c) given the dispensations provided in § 317(a) (1).

█ We note a curious feature of the Nationality Act. Section 317(c) seems to refer without exception to persons who lost their citizenship under § 401(c). Section 401(c), in applying to service "in the armed forces of a foreign state", certainly would include service in the armed forces of an enemy state. Yet it is difficult to believe that Congress, if it had thought about the matter, would have conferred the boon of a simplified renaturalization procedure upon a person who lost his American citizenship by voluntary service in the armed forces of an enemy state then at war with the United States. We say this whether or not such service would constitute levying war against the United States within the constitutional and statutory definitions of treason. And there might be a question whether such a person is "attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States." § 332(a) (17). These matters have not been briefed or argued before the District Court or before

us, and we do not explore them further. We confine ourselves to deciding the sole question considered by the court below. Our holding is merely that a person otherwise entitled to be naturalized under § 317 (c) may properly claim the benefits of that simplified and accelerated procedure upon lawful entry into the United States on a visitor's visa.

The order of the District Court is vacated, and the case is remanded to that Court for further proceedings not inconsistent with this opinion.