**In re KATSUMI YOSHIDA.**

No. 13063.

United States District Court
D. Hawaii.

July 16, 1953.

A. L. Wirin and Fred Okrand, Los Angeles, Cal., Fong, Miho, Choy & Chuck, Honolulu, Hawaii (Katsuro Miho, Honolulu, Hawaii, of counsel), for petitioner.

A. William Barlow, U. S. Atty., District of Hawaii, Nat F. Richardson, Jr., Asst. U. S. Atty., District of Hawaii, Honolulu, Hawaii, for designated Naturalization Examiner John J. Kelleher.

McLAUGHLIN, Chief Judge.

Although this petition for naturalization was filed on June 16, 1953, the petitioner is also the moving party in an action for a judgment, filed under 8 U.S.C.A. § 903 on December 11, 1952, declaring that he did *not* lose his United States citizenship, acquired by birth in Hawaii, by reason of service in the Japanese Army during World War II. This latter action is still pending.

The facts leading up to these proceedings date back to January 12, 1951, on which date the petitioner filed an application with the United States Consul at Fukuoka, Japan, for a United States passport permitting his return to the United States. In November,

1952, notice was given him by letter from the Consul advising that Washington had denied his application for a passport. Orally, he was informed shortly thereafter that a certificate of loss of nationality would be forthcoming after final action by the State Department. He was also told that an application for admission as a non-quota immigrant or visitor (in the status of an alien) would be premature until that final action had been taken. The final determination, completing the administrative action on the loss of nationality, was taken in Washington on December 23, 1952, and the certificate was received by the petitioner in Japan on or about January 28, 1953.

In the meantime, petitioner had filed through his attorneys the action for judgment declaring that he had not lost his citizenship through service in the Japanese Army during World War II. This was done on December 11, 1952, in the office of the Clerk of Court, in the District of Hawaii. He is present in the Territory of Hawaii now on the authority of a certificate of identity issued to him by the State Department for the purpose of coming to this Court to prosecute this action for the declaratory judgment under the old section 903 of Title 8, United States Code Annotated.

At present, we find the petitioner in the position of maintaining one judicial action based on the premise that he is a citizen, always has been, and did not lose such status through his service in the Japanese Army; while simultaneously, he tenders this petition on the premise that he did lose that citizenship, is now an alien, and is entitled to be naturalized under the old immigration law.

Under that law, persons formerly United States citizens, who had lost their citizenship through foreign marriages (in the case of women), or through service in foreign armies, could be naturalized by a more convenient and shortened procedure, eliminating certain notices and residence requirements. 8 U.S.C.A. §§ 717(a), 717(c), 801 (c). This might be done when the petitioner reached the United States in any lawful status, such as on a visitor's visa. DiIorio v. Nicolls, 1 Cir., 1950, 182 F.2d 836.

On December 24, 1952, the Immigration and Nationality Act went into effect, Act of June 27, 1952, 66 Stat. 166 et seq.; one of its results was the repeal of prior legislation on this entire general subject, including the repeal of section 903 which permitted the declaratory judgment suits, and also this section permitting the rapid naturalization of those who had served in foreign armies. While permitting the recapture of the status of citizenship by those who had served in *friendly* foreign armies during the war, Congress, by means of section 1438(e) of 8 U.S.C.A. expressly withdrew this benefit from those who had served in enemy forces. Without the concessions of the old act, this petitioner for naturalization would have to qualify under general requirements for citizenship, one of which is legal admission for residence, and user thereof for five years immediately prior to filing his petition. 8 U.S.C.A. § 1427. This the petitioner is unable to do, because he is here only by authority of the certificate of identity, issued for the sole and limited purpose of the prosecution of his pending action for a declaratory judgment of citizenship, and not for permanent residence. *In any event, his total residence here in the latest period of residence totals only about six months.*

But Mr. Yoshida argues that he need not comply with the new Act, because his rights were determined under the old one, and were then preserved by the savings clause of the new legislation, found in Section 405 of the Act; see also 8 U.S.C.A. § 1101 note. It provides for the survival of acts, proceedings and documents instituted under the old law, and generally purports to preserve, among other things, the validity of any declaration of intention, petition, or other document or proceeding, valid at the time of the passage of the new Act, and also preserves the life of any prosecution, suit, or action, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal. In short, it appears that if a person had actually started on his way to attaining any of the benefits or liabilities proper under the old act, his right or liability to continue was preserved by the savings clause.

Now, how does the petitioner apply this to his own case? As we understand him, his contention is that something he did before the United States Consul in Japan before the new Act went into effect had the result of establishing a status, or a right in process of acquisition, a thing, or matter or other condition included within the savings clause which now enables him to continue to take advantage of the old law under section 717(c) by this petition as an alien for naturalization.

Of course, it seems clear that, having been advised of the denial of his passport on the ground of loss of citizenship, and having filed an action for a declaratory judgment before the effective date of the new Act, the savings clause has preserved his right to continue that pending suit for a judgment declaring that he is a citizen. But that is not the issue in this petition; here, petitioner appears to say that he had established something consistent with his *loss* of nationality and his status as an alien which entitled him to go forward now with naturalization as an alien.

Despite the agreement on the facts of the case, one inconsistency appears. In his sworn application for a certificate of identity, made available for our inspection, the petitioner stated that he had previously made application for a visa under section 317(c) of the Nationality Act of 1940, 8 U.S.C.A. § 717(c), but asked that this application be withdrawn and cancelled. In his testimony before this Court, however, he stated that he never had made any such application. His explanation of the discrepancy is that the application was made out for him by a clerk at the consulate, and the statement was included inadvertently. In any event, his personal testimony tested by cross-examination is now accepted as the more reliable, and the conflict resolved.

It appears to be the practice that, in order to qualify for a visa as an alien, it must have been determined, administratively, at least, that the applicant was in fact an alien; this determination might have been made following an original application for such visa, or it might have been made as it was in this case, as a consequence of his application for a passport as a citizen. The crucial question now appears to be whether, in asserting his right as a citizen by applying for a passport, in being advised of its denial because of loss of citizenship, and after filing and maintaining a suit to declare that citizenship was not lost, any status or condition was established by him *as an alien* which could be preserved by the savings clause.

It seems to this Court that no such status or condition was established. In order to demonstrate any status or condition preserved by the savings clause, it must appear that the petitioner had taken some affirmative action tending to establish such a condition. With regard to a similar savings clause, it has been held that it did not apply to a mere condition, unattended by affirmative action. United States ex rel. Aberasturi v. Cain, 2 Cir., 1945, 147 F.2d 449. The latter holding appears to be inconsistent with Bertoldi v. McGrath, 1949, 86 U.S.App.D.C. 1, 178 F.2d 977. There the court held that a similar savings clause operated to preserve the accumulated residence of 4 years, leading to full citizenship after five years of residence, as a right in process of acquisition, where no other act or procedure was demanded of the prospective citizen. To the argument that in requesting a citizen's passport and being denied the same, petitioner thereby began to establish a "right in process of acquisition" to be declared an alien and to be naturalized thereafter under 8 U.S.C.A. § 717(c) there is an answer. At the time this petitioner was denied a passport on the ground stated, he had two alternate and inconsistent courses of action open to him: he might continue to assert his citizenship and file suit for a judgment declaring it was not lost—which he did, or he might accept and proceed upon the basis of the State Department ruling as an alien. In taking the first mentioned course, this Court now holds that petitioner abandoned the alternative of asserting any existing rights as an alien. Such abandonment may be found in his filing the suit for declaratory judgment, and his request to withdraw any application for a visa as an alien when applying for a certificate of identity.

The Bertoldi and Cain cases, supra, though indicating differing opinions on similar facts, are not necessarily controlling here, where the fact situation is so completely different. Both of those cases dealt with a condition which would ripen into citizenship by the mere passage of time, and without any affirmative act by the prospective citizen. In the instant case, naturalization under section 717(c) of the old Act requires a series of affirmative acts, including travel to the United States, and activation of a petition for naturalization. True it is that this has been done by the petitioner, but the acts consistent with this theory of his case came too late—after the repeal of their statutory authorization.

While there were acts, documents made, and affirmative steps taken by the petitioner before the door was closed by the new Act on December 24, 1952, we feel that each and every action taken was consistent with the idea that Yoshida had not lost his former citizenship, that his passport was unjustly denied, and that his presence here now is for the purpose of final determination that he has always been a citizen. No evidence appears of any acts tending to establish even an intention on his part to claim or qualify for rights as an alien, until the filing of this petition in June, 1953, an action which, under the new Act, not only comes too late, but is prohibited absolutely by section 1438(e) of the new Nationality Code, 8 U.S.C.A. § 1438(e).

The petition is accordingly denied.