Felice ROSEN, Derivatively on Behalf of Egghead.Com, Inc., and Egghead.Com, Inc., Plaintiffs,

v.

BROOKHAVEN CAPITAL MANAGEMENT, CO., LTD., Focused Capital Partners, L.P., Watershed Partners, L.P., Cadence Fund, L.P., Brookhaven Capital Management, LLC, Piton Partners, L.P., Skye Investment Advisors, LLC, Skye Investments, Inc., Vincent Carrino, Daniel Coleman, Paul McEntire, and Robert Lishman, Defendants.

No. 99 Civ. 9397(CSH).

United States District Court, S.D. New York.

March 7, 2002.

Glenn F. Ostrager, Ostrager Chong & Flaherty, New York City, for plaintiff.

Sheldon Eisenberger, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

In an Opinion dated January 9, 2002, familiarity with which is assumed, the Court denied defendants' *in limine* motion to preclude certain of plaintiff's claims. This Opinion resolves the remaining *in limine* motions.

## I. DEFENDANTS' OTHER MOTIONS

A. *Evidence on the Applicability of the Investment Adviser Exemption*

Plaintiff's claim under Section 16 of the Securities and Exchange Act of 1934 is that defendants as a group (the "Brookhaven Group") were the beneficial owners of more than 10 percent of the common stock of Egghead.com ("Egghead") and that defendants realized profits from the purchase and sale of their shares in Egghead within a period of less than six months. *See* 15 U.S.C. § 78p(b). Defendants invoke the exemptions from the definition of beneficial ownership listed in S.E.C. Rule 16a–1 (17 C.F.R. § 240.16a–1). Included in that list are registered investment advisers and groups of registered investment advisers. The securities held by such persons "for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business" are exempt as long as there is no "purpose or effect of changing or influencing control of the issuer or engaging in any arrangement subject to Rule 13d–3(b)...."

Defendants seek to preclude plaintiff from challenging defendants' entitlement to the investment adviser exemption on any grounds other than the grounds attacked by plaintiff in the complaint. Defendants raise this argument in two

separate motions *in limine*, which are substantially identical in content.[1] Defendants assert that plaintiff's complaint acknowledged defendants' entitlement to the investment adviser exemption in general and only challenged the applicability of the exemption on two grounds: that defendants intended to change or influence control over Egghead and that certain members of the Brookhaven Group are not independently exempt. This latter ground was rejected by the Court as a matter of law in its Opinion denying defendants' motion to dismiss. *Interstate Commerce Com'n v. Kroblin*, 113 F.Supp. 599, 621–29 (N.D.Iowa 1953). Defendants. therefore contend that plaintiff should be precluded from challenging defendants' entitlement to the investment adviser exemption on any grounds other than that defendants intended to change or influence control over Egghead.

Defendants make reference in their motion to only one other ground upon which plaintiff might challenge the investment adviser exemption. This ground for challenge is that defendants were registered as investment advisers under state but not federal law in violation of 15 U.S.C. § 80b–3 and § 80b–3a. Defendants point out that plaintiff should have known from a letter written to plaintiff by Egghead's counsel on March 3, 1999, that defendants Brookhaven Capital Management Co., Ltd. and Brookhaven Capital Management Co., LLC were registered under state but not federal law. Defendants argue that plaintiff's failure to include this ground in the complaint constitutes an admission that defendants' entitlement to the investment adviser exemption is unassailable on this ground.

Defendants misunderstand both the burden on the plaintiff in pleading facts in her complaint and the nature of judicial admissions. A plaintiff's complaint should contain allegations that support her claim, but a plaintiff has no obligation to anticipate and refute potential affirmative defenses. *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir.1999) (holding that complaint need not anticipate statute of limitations, which is an affirmative defense), *citing* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1276 (2d ed.2001). Anticipation of defenses in a complaint was not even recognized at common law and now is merely tolerated. *Alcoa S.S. Co. v. Ryan*, 211 F.2d 576, 578 (2d Cir.1954). Rule 8(c) of the Federal Rules of Civil Procedure imposes on the defendant the burden of pleading in its answer any matter "constituting an avoidance or affirmative defense." *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (holding that defendant in civil rights case has burden of pleading defense of qualified immunity and plaintiff has no obligation to anticipate such defense), *citing* 5 Wright & Miller § 1276. Plaintiff may always, however, rebut defendant's proof of affirmative defenses.

It has long been established that statutory exceptions constitute defenses which must be pleaded and proved by the defense. As the Supreme Court stated nearly eighty years ago:

> By repeated decisions it has come to be a settled rule ... that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not

---

1. The first is entitled "Defendants' Motion in Limine to Preclude Plaintiff from Challenging Defendants' Investment Adviser Exemption." The second is entitled "Defendants' Motion in Limine to Preclude Plaintiff from Presenting any Claims and any Evidence other than the Claim and Evidence that Defendants Intended to Change or Influence Control over Egghead, Inc."

negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

*McKelvey v. United States,* 260 U.S. 353, 356–57, 43 S.Ct. 132, 67 L.Ed. 301 (1922); *accord Bowles v. Wheeler,* 152 F.2d 34, 41 (9th Cir.1945); *United States v. King & Howe,* 78 F.2d 693, 696 (2d Cir.1935); *United States v. Acnotabs,* 207 F.Supp. 758, 768 (D.N.J.1962). Courts have also specifically held in the securities context that defendants have the burden to plead and prove statutory exemptions. *Securities and Exchange Commission v. Ralston Purina Co.,* 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953) ("Keeping in mind the broadly remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable."); *see also Byrnes v. Faulkner, Dawkins & Sullivan,* 550 F.2d 1303, 1311 (2d Cir.1977); *Securities and Exchange Commission v. Culpepper,* 270 F.2d 241, 246 (2d Cir.1959); *Securities and Exchange Commission v. Parnes,* No. 01 Civ. 0763, 2001 WL 1658275, at *6 (S.D.N.Y. Dec. 26, 2001) ("[A] plaintiff need not plead the inapplicability of an exemption, as the party claiming exemption from registration requirements bears the burden of proving that the exemption applies."); *Steed Finance LDC v. Nomura Securities International, Inc.,* No. 00 Civ. 8058, 2001 WL 1111508, at *5 (S.D.N.Y. Sept. 20, 2001).

In this case, the claim which plaintiff raised in her complaint and which plaintiff has the burden to prove at trial is that defendants as a group were the beneficial owners of more than 10 percent of the common stock of Egghead and that defendants realized profits from the purchase and sale of their shares in Egghead within a period of less than six months. Compl.

¶¶ 16, 22–27; *see* 15 U.S.C. § 78p(b). Defendants raised the affirmative defense in their answer that they are exempt under the securities laws, Answer ¶ 29, and it is defendants' burden to prove at trial their entitlement to an exemption. In turn, plaintiff may rebut defendants' proof of their affirmative defense. The fact that plaintiff anticipated and challenged defendants' affirmative defense in the complaint, Compl. ¶¶ 17–20, does not alter the allocation of burdens.

■ Defendants inaccurately refer to plaintiff's anticipatory challenges as "claims" and argue that they have a right to notice of these "claims" in the complaint. Defendants contend that they failed to prepare alternative defenses because they did not have notice of all the ways plaintiff might challenge defendants' entitlement to the investment adviser exemption. Defendants have no right to notice, in the complaint or otherwise, of the manner in which plaintiff may rebut defendants' proof of an affirmative defense. Defendants' reliance on *LNC Investments, Inc.,* which involved a plaintiff's failure to give notice of claims which the plaintiff bore the burden of pleading and proving at trial, is misplaced. *LNC Investments, Inc. v. First Fidelity Bank,* No. 92 Civ. 7584, 2000 WL 1093012 (S.D.N.Y. Aug.4, 2000) (plaintiff failed in initial pleadings to claim that defendant trustees were liable for their failure to assert § 507(a) administrative expense priority in bankruptcy court). Defendants have not cited any case holding that a plaintiff must give notice in the complaint, or at any stage for that matter, of the manner in which the plaintiff will rebut likely defenses.

■ In addition to their argument that plaintiff is obligated to give notice of how it will challenge defendants' entitlement to the investment adviser exemption, defendants also make the argument that plain-

tiff admitted in the complaint that the investment adviser exemption is valid in this case "as a general matter" and can only be challenged on the two grounds raised in the complaint. Defendants contend that plaintiff should be bound by these "admissions."

■ It is true that "stipulations and admissions in the pleadings are generally binding on the parties and the Court." *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984). Plaintiff has not, however, made any binding admissions. Plaintiff did not admit in the complaint that the investment adviser exemption is generally valid in this case. The complaint does identify several defendants as "investment advisers," but such factual descriptions are not admissions that the statutory requirements of the investment adviser exemption are met. Paragraphs 17–19 of the complaint, to which defendants refer, anticipate the investment adviser exemption as a likely defense and provide reasons why that exemption is not applicable. The mere fact that plaintiff anticipated the defense and challenged it on particular grounds does not constitute an admission that the defense is valid "as a general matter." Furthermore, the fact that plaintiff unnecessarily raised two challenges to the investment adviser exemption in her complaint does not constitute an admission that no other challenges exist. As previously explained, plaintiff has no obligation to anticipate and rebut defendants' likely affirmative defenses in her complaint. Therefore, plaintiff's failure to raise any particular challenge in the complaint does not constitute an admission.

■ "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel...." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995); *accord Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 Civ. 6876, 2001 WL 357316, at *1 (S.D.N.Y. Apr. 10, 2001); *Guadagno v. Wallack Ader Levithan Assoc.*, 950 F.Supp. 1258, 1261 (S.D.N.Y.1997); *see also Diaz v. Reno*, No. 97 CIV. 6580, 2000 WL 502852, at *3 (S.D.N.Y. Apr. 26, 2000) (citing authorities defining "judicial admission" as "distinct and formal admission" or "unequivocal admission" made by attorney). The cases relied upon by defendants on the issue of admissions concern express stipulations of fact entered into by the parties or express statements of fact in the pleadings. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir.1985) (disregarding affidavits by party seeking to contradict statements of fact in its own pleading); *PPX Enterprises*, 746 F.2d at 123 (holding that district court was bound to accept stipulated facts in deciding motion for summary judgment); *Mull v. Ford Motor Co.*, 368 F.2d 713, 716 (2d Cir.1966) (holding that plaintiff was bound by stipulations of fact in joint pre-trial order, which paralleled statements of fact in complaint); *Peckham Materials Corp. v. Raima Corp.*, No. 90 Civ. 4134, 1995 WL 422158, *1 (S.D.N.Y. July 18, 1995) (prohibiting plaintiff from contradicting at trial statements of fact made in complaint). Defendant does not point to any comparable statement in plaintiff's complaint that would constitute a binding admission.

■ Defendant makes the final argument that the Court's Opinion denying defendants' motion to dismiss held that the only issue to be litigated on the applicability of the investment adviser exemption was whether defendants intended to change or influence control over Egghead. Defendant misunderstands the procedural role of a motion to dismiss. In a motion to dismiss, the defendant bears the burden of showing that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Morris v. Local 819*,

*Int'l Bhd. of Teamsters,* 169 F.3d 782, 784 (2d Cir.1999), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff may defeat a motion to dismiss, therefore, by showing that some particular set of facts which may be elicited through discovery would support her legal claim. Accordingly, the Court denied defendants' motion to dismiss in this case on the basis that discovery was appropriate to determine, "among other things," whether defendants intended to change or influence control of Egghead. *In re Yoshida,* 113 F.Supp. 631, 633 (D. Hawaii 1953). Plaintiff had no obligation, in opposing defendants' motion to dismiss, to raise every possible challenge to defendants' claim of exemption. Plaintiff needed to raise only one challenge which had the potential to succeed after discovery.

Since plaintiff had no obligation to give notice of the manner in which it may rebut defendant's offer of proof on the investment adviser exemption, since plaintiff has not made any admissions that the exemption is generally valid in this case or that only certain challenges to the exemption are valid, and since the Court's Opinion denying defendants' motion to dismiss did not limit the methods by which plaintiff may challenge defendants' proof of the investment adviser exemption, plaintiff is not precluded in any manner from rebutting defendant's proof of the investment adviser exemption at trial.

**B.** *Admissibility of the Fact that Defendants Attempted and Failed to Claim the Investment Adviser Exemption for 1997*

The next of defendant's motions *in limine* under consideration by the Court concerns the fact that defendants were registered as investment advisers under state law but not under federal law. Defendants anticipate that plaintiff will challenge their entitlement to the investment adviser exemption for the year 1997 on

this basis and ask the Court, in the event that plaintiff's challenge is successful, to preclude plaintiff from introducing at trial the fact that defendants attempted and failed to claim the investment adviser exemption for 1997. Plaintiff responds that it will only seek to introduce such evidence to the extent that it bears on the credibility of defendant Vincent Carrino. Plaintiff provides no explanation of how this evidence would be relevant to Carrino's credibility.

At this stage, it would be premature to rule on defendant's motion. Plaintiff has not yet challenged defendants' entitlement to the investment adviser exemption for 1997 on the basis of defendants' failure to obtain federal registration. The Court has not yet had occasion to consider the effect of defendants' registration with state but not federal authorities. Finally, the content of Carrino's testimony is still unknown, therefore it is not yet possible to determine what methods of attacking his credibility are appropriate. For these reasons, I deny defendants' motion without prejudice to their renewing it at an appropriate time, i.e. when the underlying circumstances cease to be merely hypothetical.

**C.** *Admissibility of Defendants' Schedule 13D's*

In drafting the complaint, plaintiff relied upon information contained in Schedule 13Ds filed by defendants pursuant to the Securities and Exchange Act of 1934. During the process of discovery, it became apparent that the 13Ds were inconsistent with other trading records produced by defendants. Defendants now argue that, because the parties agree that the 13Ds are "erroneous and lack trustworthiness," those documents are not sufficiently reliable and relevant to be admissible at trial. Defendants therefore ask the Court to preclude plaintiff from offering at trial the 13Ds filed by defendants.

The Schedule 13Ds are relevant, because they concern defendants' trades of stock in Egghead, the central issue in plaintiff's claim. They are not hearsay, because they are admissions of a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence. Defendants' reference to Rule 803, which concerns hearsay business records, misses the mark. Defendants are also wrong in their unsupported contention that documents containing inaccuracies cannot be relevant to any issue.

I reject defendants' attempt to rely on their own errors to prevent plaintiff from presenting to the jury the complete set of records documenting defendants' trading activity. Plaintiff may rely on the 13Ds in whole or in part, and in combination with other evidence, to prove what trades defendants engaged in. Defendants, in turn, are entitled to argue to the jury that defendants' own statements are unreliable and not worthy of belief.

## II. PLAINTIFF'S MOTION

Not to be outdone, plaintiff has made an *in limine* motion of her own; but the issues sought to be raised are not entirely clear.

Plaintiff says that her motion "seeks to preclude any testimony or the introduction of any documents in contradiction of defendants' judicial admissions that the documents produced in discovery represent all their transactions in Egghead.com, Inc. securities." Brief at 2.

Defendants respond that they "are not precluded from introducing into evidence all of the documents produced in this case and any document not required to be produced. Moreover, testimony should be permitted to explain any of the documents produced, including the reasons defendants believed the documents represented all of the transactions for the period requested." Brief at 2.

While plaintiff casts the issue in terms of "judicial admissions," the motion papers more closely resemble a motion to preclude defendants from offering at trial evidentiary material that defendants should have produced in response to plaintiff's discovery demands but failed to do so. That is certainly the manner in which Judge Marrero viewed the controversy; the provision in his Order dated September 25, 2001 upon which plaintiff relies in support of her *in limine* motion directs that "the parties shall be precluded from offering any materials not produced in response to discovery demands properly made prior to the discovery deadline."

The record reflects prolonged wrangling over discovery. Defendants made a motion under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint. Judge Marrero denied that motion in a comprehensive opinion dated September 29, 2000 and reported at *Rosen v. Brookhaven Capital Management Co., Ltd.*, 113 F.Supp.2d 615 (S.D.N.Y. 2000). Judge Marrero identified as the core question "whether [defendant] Brookhaven's 13D filing and actions indicate a purpose or effect to change or influence control of Egghead." *Id.* at 630. He declined to decide that question on the record then existing, thinking it inappropriate "[t]o grant defendants a Rule 12(b)(6) motion to dismiss and thereby to curtail inquiry by a derivative plaintiff before meaningful discovery has occurred regarding a Schedule 13D group filer's true plans and purpose as to a given stock acquisition," *id.* at 632. Judge Marrero summarized the pertinent areas of discovery at the conclusion of his opinion, *id.* at 633. Not surprisingly, those areas of discovery focused upon the circumstances surrounding Brookhaven's purchases of Egghead shares during the pertinent time period, which began on January 1, 1997 and ended on December 31, 1998, and Brookhaven's involvement, if any, in Egghead's corporate affairs.

Thus encouraged, plaintiff embarked on discovery, which almost immediately became contentious. On her present motion plaintiff states that "she sought discovery from defendants concerning their trading in Egghead stock." Brief at 3. That was, of course, an entirely legitimate discovery demand. Defendants' counsel responded in a letter dated January 4, 2001 that "we are prepared to produce the trading records in Egghead.Com, Inc. for the relevant time period. There are no documents reflecting meetings/communications, etc. with or about Egghead.Com." Eisenberger letter dated January 4, 2001. Plaintiff's brief states at 3 that "[o]n January 8, 2001, plaintiff received BRK 1–97[2] which was represented to be 'the trading records in Egghead.Com, Inc. for the relevant time period'" (quoting the Eisenberger January 4 letter).

Plaintiff's counsel compared these trading records with the Schedule 13Ds previously filed by defendants and perceived discrepancies. Plaintiff demanded further documentary discovery with respect to Brookhaven's trading in Egghead stock. Defendants resisted. Judge Marrero referred the dispute to Magistrate Judge Peck, who received letters from counsel and conducted a hearing on June 29, 2001. I need not describe those proceedings in detail. It is sufficient to state that Judge Peck rejected plaintiff's demand for expanded discovery, such as subpoenas to the brokers to recover their trading slips, principally because Judge Peck relied upon the repeated representations of defendants' counsel that the documents previously produced (1) told the full trading tale and (2) were all the relevant documents defendants had.

In those circumstances, Judge Marrero's preclusion order dated September 25, 2001 was clearly correct, and constitutes the law of the case in any event. I will enforce that order at trial. That is to say: defendants will not be permitted to offer at trial any documents relating to Brookhaven's trading in Egghead stock which were not previously produced in discovery; nor will Brookhaven witnesses be allowed to testify about any transactions referred to in documents that should have been produced but were not. Defendants will be permitted to testify concerning the documents properly produced, and may offer documents that were not embraced by any discovery demand made by plaintiff. It is not possible at present to do more than announce these general guidelines. Rulings with respect to particular proffers of evidence may have to await trial.

It is SO ORDERED.

---

**2.** "BRK" is presumably an abbreviation for "Brookhaven." The numbers 1–97 reflect the defendants' use of the Bates numbering system.