Brad **PACKER**, Derivatively **ON BEHALF OF 1–800–FLOWERS.COM, INC.**, Plaintiff,

v.

**RAGING CAPITAL MANAGEMENT, LLC, Raging Capital Master Fund, Ltd., William C. Martin** and **1–800–flowers.com, Inc.**, Defendants.

**CV 15–5933 (GRB)**

United States District Court,
E.D. New York.

Signed 03/10/2017

---

Glenn Frederick Ostrager, Roberto Legaspi Gomez, Ostrager Chong Flaherty & Broitman P.C., Paul D. Wexler, New York, NY, for Plaintiff.

Kyle J. Kolb, Thomas J. Fleming, Renee Michele Zaytsev, Olshan Frome Wolosky, LLP, Thomas J. Kavaler, Cahill Gordon & Reindel LLP, New York, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

GARY R. BROWN, United States Magistrate Judge:

"The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure.... Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."

-*Hickman v. Taylor*, 329 U.S. 495, 500–01, 67 S.Ct. 385, 91 L.Ed. 451 (1947)

Pending before the Court is a motion to dismiss, or in the alternative, for summary judgment, brought by defendants RAGING CAPITAL MANAGEMENT, LLC, RAGING CAPITAL MASTER FUND, LTD. and WILLIAM C. MARTIN (the "Raging Capital defendants") in this shareholder derivative action seeking disgorgement of short-swing profits from the Raging Capital defendants under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). The central questions presented are whether the Raging Capital defendants fall within the registered investment adviser exemption contained in Section 16, and whether this determination can be made at this juncture. As discussed in greater detail below, the exemption is an affirmative defense not subject to resolution on a motion to dismiss. Moreover, in absence of discovery, which was stayed at defendants' request pending the outcome of this motion, summary judgment is equally inappropriate here. Thus, the motions are DENIED.

## PROCEDURAL HISTORY

Plaintiff BRAD PACKER ("Packer"), derivatively on behalf of nominal defendant 1–800–FLOWERS.COM, INC. ("Flowers"),[1] commenced this action by the

---

1. Per a letter from its counsel, "Flowers takes no position on any issue in this case; the Company stands ready to receive ... the net

filing of a complaint on October 15, 2015. Flowers filed an answer on December 22, 2015, DE 14, while the Raging Capital defendants filed the instant motion in lieu of an answer. Following a preliminary conference, on January 25, 2016 the Court entered a discovery schedule. DE 20. In early April 2016, all parties consented to the jurisdiction of the undersigned for all purposes; those consent stipulations were "so ordered" by the Honorable Leonard D. Wexler. DE 27, 28.

Via a letter motion dated April 12, 2016, counsel for the Raging Capital defendants sought a stay of discovery, predicated on the notion that "[g]ood cause exists to stay discovery pending the Court's decision on the Raging Capital Defendants' Motion to Dismiss." DE 29 at 2. While counsel mentioned the defendants' anticipated summary judgment motion in a footnote, the application was firmly predicated upon a scheduled, though then as-yet-unfiled motion to dismiss. *Id.* After consideration, the undersigned granted a stay of discovery pending resolution of the motion. Electronic Order dated April 19, 2016.

On June 7, 2016, the parties filed the motion papers relating to the Raging Capital defendants' motions to dismiss and for summary judgment. DE 34–36. On February 16, 2017, Packer moved via letter application to lift the stay of discovery, which motion remains *sub judice.* DE 38–39.

## FACTS

The Complaint alleges as follows: Packer, a New York resident, holds an undisclosed number of shares of common stock of Flowers, a Delaware corporation maintaining a principal place of business in Carle Place, NY. DE 1 ¶¶ 1–2. Defendant Raging Capital Management, LLC ("RC Management") is described as "a registered investment adviser that provides advisory services to defendant Raging Capi-

tal Master Fund, Ltd.," while defendant William C. Martin serves as Chief Investment Officer and Managing Member of RC Management. DE ¶¶ 3, 5. Defendant Raging Capital Master Fund, Ltd. ("Master Fund") is "a private investment limited partnership," headquartered in the Cayman Islands. DE ¶ 4.

The Complaint alleges that the Raging Capital defendants constitute a "group for purposes of determining beneficial ownership under §§ 13(d)(3) and 16(b) of the Exchange Act," meaning that "the shares held by persons in such a group are aggregated to determine whether the group has a greater than 10% beneficial ownership in the issuing corporation." *Id.* ¶¶ 8–9 (citing SEC Rule 16a–1). In support of this claim, the Complaint alleges that "all purchases and sales for each of the Raging Capital [defendants] were directed by Martin, at all relevant times, a group was formed and operative within the meaning of § 13(d)(3) of the Exchange Act, for the purpose of acquiring, holding and disposing of shares of Common Stock." *Id.* ¶ 9. To further buttress this claim, the Complaint alleges that "various SEC filings were made collectively on behalf of all group members, Management is the investment adviser to Master Fund and Martin is the sole Manager of Management." *Id.*

The Complaint then sets forth data taken from various public filings describing transactions demonstrating that, in the aggregate, the Raging Capital defendants held in excess of 10% of the outstanding shares of Flowers. *Id.* ¶¶ 10–13. Some of these transactions were within the six-month time frame, thus allegedly generating short-swing profits. *Id.* The Complaint further alleges that the Raging Capital defendants "repeatedly and materially violated the reporting requirements under the Williams Act and under Section 16(a)

proceeds of any settlement or judgment." DE 26.

of the Exchange Act and the standstill provision of SEC Rule 13d-l(f)," and that such "actions were designed to deprive the marketplace of critical information concerning the Raging Capital Group's plans to acquire a substantial stake in the Company as well as to conceal the Raging Capital Group's short-swing profit liability." *Id.* ¶ 14. Based on these allegations, the Complaint purports to set forth a cause of action seeking disgorgement of these alleged short-swing profits. *Id.* ¶¶ 15–19.

*Additional Facts on Summary Judgment*

In support of their alternative motion for summary judgment, the Raging Capital defendants submit a declaration of defendant Martin. In that declaration, he avers—as is conceded—that Management is a registered investment adviser, and that it provides such services to Master Fund, *inter alia.* DE 34–3 ¶ 2. Martin further states that the relationship is governed by an "Investment Management Agreement" ("IMA"), which provides that (1) Management "makes all investment decisions for the assets held by Raging Master Fund," and (2) "Master Fund has neither voting nor investment power over the shares managed by" Management. *Id.* ¶ 4. Martin declares that to the extent that he and/or Management owned shares in Flowers, such shares were "solely in our capacity as investment manager, which entitles [Management] to vote and dispose of the securities." *Id.* ¶ 6. He then avers in a statement unsupported (and perhaps unsupportable) by any documentation, that:

> The aforementioned securities were acquired and held in the ordinary course of business. They were not acquired or held for the purpose or effect of changing or influencing control of the issuer or in connection with or as a participant in any transaction having that purpose or effect.

*Id.* ¶ 7. He further acknowledges that he is a director of Master Fund, though two other independent directors act in the same capacity, and a majority of directors must approve all decisions. DE 34–20 ¶ 3. He also advises that Master Fund manages over $600 million in net assets, and that Martin and members of his family own, directly and indirectly, significant interests in Master Fund. *Id.* ¶ 4.

Packer's response to the factual material proffered on defendants' summary judgment motion is a declaration of counsel pursuant to Federal Rule of Civil Procedure ("Rule") 56(d) identifying discovery needed for plaintiff to fully respond to the summary judgment motion, including the following subject areas:

a) The validity and scope of a purported delegation of beneficial ownership from Master Fund to Management;

b) Management's entitlement to the investment adviser exemption to beneficial ownership contained in SEC Rule 16a-l(a)(*l*)(v);

c) Martin's entitlement to the control person exemption to beneficial ownership contained in SEC Rule 16a-1 (a)(*l*)(vii);

d) Martin's control of, and ownership interest and investments in, Master Fund, Management and their affiliate "Feeder Funds", Raging Capital Fund (QP), LP and Raging Capital Offshore Funds, Ltd.;

e) The purchases and sales made by Defendants in Flowers equity securities during the period April 30, 2014 to January 31, 2015;

f) Whether Defendants acted as a group in their trading of Flowers equity securities during the period April 30, 2014 to January 31, 2015;

g) Whether Defendants' arguments in this case conflict with their own sworn SEC filings in which they admitted their

beneficial ownership in Flowers equity securities; and

h) The reasons why neither Martin, Management or Master Fund filed Form 3s and/or Form 4s for Flowers equity securities.

DE 34–7 ¶ 8.

## DISCUSSION

### Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Henry v. Nannys for Grannys Inc.*, 86 F.Supp.3d 155, 157 (E.D.N.Y. 2015) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must supply "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955); *see Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt., LLC*, 595 F.3d 86, 91 (2d Cir. 2010); *see also* Fed. R. Civ. P. 12(b)(6). A claim is plausible when the plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937.

Also relevant here is the question of whether an affirmative defense may be considered before the filing of answer on a Rule 12(b)(6) motion. "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, *if the defense appears on the face of the complaint.*" *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (emphasis added). As one court observed:

A plaintiff's complaint should contain allegations that support her claim, but a plaintiff has no obligation to anticipate and refute potential affirmative defenses. *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999) (holding that complaint need not anticipate statute of limitations, which is an affirmative defense), *citing* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1276 (2d ed.2001). Anticipation of defenses in a complaint was not even recognized at common law and now is merely tolerated. *Alcoa S.S. Co. v. Ryan*, 211 F.2d 576, 578 (2d Cir. 1954). Rule 8(c) of the Federal Rules of Civil Procedure imposes on the defendant the burden of pleading in its answer any matter "constituting an avoidance or affirmative defense."

*Rosen v. Brookhaven Capital Mgmt., Co.*, 194 F.Supp.2d 224, 227 (S.D.N.Y. 2002).

To the extent defendants seek summary judgment, that motion is considered under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F.Supp.3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed.Appx. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

## The Statutory Scheme

 Recently, in a similar case, Judge Ramos provided a cogent, concise summary of applicable law, which provides an excellent framework for this discussion:

Section 16(b) of the Exchange Act imposes liability on statutory insiders who earn short-swing profits from the purchase and sale of securities. *See* 15 U.S.C. § 78p(b). "The statute aims to deter insiders from taking unfair advantage of confidential company information to realize short-swing profits on trades in the company's stock." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 122 (2d Cir. 2001) (citation omitted).

Short-swing trading is generally defined as the purchase and sale, or the sale and purchase, of a company's stock within a six-month period. *Id.* at 121. A statutory insider includes not only traditional insiders, such as a company's directors and officers, but also "beneficial owners" of more than ten percent of any class of any equity security of the company. 15 U.S.C. § 78p(a)(1); *See Facebook, Inc. v. Morgan Stanley & Co. LLC*, 986 F.Supp.2d 544, 550 (S.D.N.Y. 2014). For Section 16(b) purposes, a "beneficial owner" is defined under Section 13(d) to include any "person" who, directly or indirectly, has or shares (1) voting or investment power over and (2) a pecuniary interest in a security. 17 C.F.R. § 240.16a–1(a)(1)–(2); · *id.* § 240.13d–3(a)(1)–(2).

"Persons" include corporations, partnerships, associations, joint-stock companies, trusts, funds, or "any organized group of persons whether incorporated or not." 15 U.S.C. § 80a–2(a)(8). Under SEC Rule 16a–1(a)(1); when two or more persons "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer," such persons are deemed to be a "group." 15 U.S.C. § 78m(d)(3); 17 C.F.R. § 240.16a–1(a)(1). The shares held by persons in a group are aggregated for the purpose of determining Section 16(b) liability. 17 C.F.R. § 240.16a–1(a)(2). Thus if the aggregate number of shares owned by a group exceeds ten percent, beneficial ownership exceeding ten percent is attributed to each member of the group. *Id.; see Rosen v. Brookhaven Capital Mgmt. Co.*, 113 F.Supp.2d 615, 617 (S.D.N.Y. 2000).

While Section 16 refers initially to the definition in Section 13(d) for the purpose of determining beneficial ownership, the rules further narrow the criteria for beneficial ownership by exempting certain persons and entities. Specifically, Rule 16a–1(a)(1) "circumscribes the scope of beneficial ownership" by "carving out an exclusion consisting of three interrelated shareholder requirements: (1) the person or entity must fall into at least one of the "categories of specifically enumerated institutions or persons" which may invest in an issuer's securities provided for in Rule 16a–1(a)(1)(i)-(ix); (2) the person or entity must maintain the issuer's securities "for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business"; and (3) the person or entity must have acquired the issuer's securities "without the purpose or effect of changing or influencing control of the issuer or engaging in other impermissible arrangements." *Rosen*, 113 F.Supp.2d at 622 (citing 17 C.F.R. § 240.16a–1(a)(1)). If a party meets these three criteria, the shares held by that party are not counted "for purposes of determining ten percent holder status" under Section 16(b). *Id.*

As to the first requirement, one of the "categories of specifically enumerated

institutions or persons" which may invest in an issuer's securities, includes "any person registered as an investment advisor under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3) or under the laws of any state." 17 C.F.R. § 240.16a–1(a)(1)(v). This is referred to as the registered investment advisor exemption ("RIA Exemption"). Thus if a registered investment advisor manages an issuer's securities for the benefit of third parties, the advisor shall not be considered a beneficial owner of those securities under Section 16(b).

Suit to recover short-swing profits realized by a statutory insider may be brought by the issuer of the securities or by another shareholder on behalf of the issuer. 15 U.S.C. § 78p(b). Section 16(b) imposes liability without fault, meaning neither unlawful intent nor actual misuse of inside information is required to compel disgorgement of short-swing profits. *See Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320 (2d Cir. 1998). For this reason, Section 16(b) has been described as a "blunt instrument," *Magma*, 136 F.3d at 321, "a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great," *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972). The Supreme Court has cautioned that because "Congress has so recognized the need to limit carefully the 'arbitrary and sweeping coverage' of [Section] 16(b), courts should not be quick to determine that, despite an acknowledged ambiguity, Congress intended the section to cover a particular transaction." *Foremost–McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 253, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976) (quoting *Bershad v. McDonough*, 428 F.2d 693, 696 (7th Cir. 1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440 (1971)).

*Greenfield v. Cadian Capital Management, LP*, No. 15 Civ. 4478 (ER), 213 F.Supp.3d 509, 511–13, 2016 WL 5793416, at *1–2 (S.D.N.Y. Sept. 30, 2016).

### The Motion to Dismiss

Defendants' motion to dismiss centers around the notion that because it is undisputed that Management is a registered investment adviser, Martin is a control person and Master Fund is a client of Management, the registered investment adviser exemption ("RIA Exemption") contained in Section 16a–1(a)(1) requires dismissal of the complaint. *See, e.g.*, DE 34–1 at 1. Defendants clearly satisfy the first element of the RIA Exemption—that is, the Raging Capital defendants "fall into at least one of the 'categories of specifically enumerated institutions or persons' " that may qualify for the exemption. *Greenfield*, 213 F.Supp.3d at 511–13, 2016 WL 5793416 at *1–2. In fact, this is alleged on the face of the complaint. *See* Compl. ¶ 3.

However, the second two requisites of the RIA exemption, to wit: (1) that the securities at issue were maintained "for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business" and (2) that the securities must have been acquired "without the purpose or effect of changing or influencing control of the issuer or engaging in" other impermissible arrangements, prove more problematic. 17 C.F.R. § 240.16a–1(a)(1). As to these requirements, defendants contend that the complaint "does not allege that the remaining criteria for exemption are not met." DE 34–1 at 6, 10. Though formulated as a double negative, this assertion does not establish the contrapositive: it is not the case that the complaint here affirmatively states that these transactions were in the ordinary course or were undertaken without improper purpose. Indeed, the reasonable inferences drawn from the complaint are

precisely the opposite. *See, e.g.*, Compl. ¶ 14 (defendants' transactions were "designed to deprive the marketplace of critical information concerning the Raging Capital Group's plans to acquire a substantial stake in the Company").

■ Equally important, however, plaintiff correctly argues that it need not, at this stage, plead an improper purpose. Rather, plaintiff contends, that by alleging "insider status, trades within six months of each other, and profits," it has plead "every element of a § 16(b) action." DE 34–6. As one court held in the same context:

the claim which plaintiff raised in her complaint and which plaintiff has the burden to prove at trial is that defendants as a group were the beneficial owners of more than 10 percent of the common stock of Egghead and that defendants realized profits from the purchase and sale of their shares in Egghead within a period of less than six months. Compl. ¶¶ 16, 22–27; *see* 15 U.S.C. § 78p(b). Defendants raised the affirmative defense in their answer that they are exempt under the securities laws, Answer ¶ 29, and it is defendants' burden to prove at trial their entitlement to an exemption. In turn, plaintiff may rebut defendants' proof of their affirmative defense.

*Rosen,* 194 F.Supp.2d at 228. Even after the assertion of an affirmative "dealer exemption" defense, Judge Pauley rejected a 12(c) motion in a similar case, holding that "the SEC has 'no obligation to anticipate and refute [the defendant's] potential affirmative defenses.'" *SEC v. Caledonian Bank Ltd.,* 145 F.Supp.3d 290, 305 (S.D.N.Y. 2015) (quoting *Rosen,* 194 F.Supp.2d at 227–28).

In urging this Court to dismiss the complaint under Rule 12(b)(6), defendants rely on *Egghead.com, Inc. v. Brookhaven Capital Management Co.,* 340 F.3d 79, 82 (2d Cir. 2003). *See, e.g.,* DE 34–1 at 6–8. While,

viewed superficially, *Egghead.com* could provide support for defendants' position, the unusual procedural posture of the case distinguishes that decision from the case at bar. In *Egghead.com,* as here, plaintiff sought disgorgement of short-swing profits from defendants whose holdings only exceeded the 10% threshold if those defendants were viewed as a group. 340 F.3d at 82. The complaint in *Egghead.com,* like the instant complaint, alleged that "the defendants acted as a 'group,' as defined by § 13(d)(3) of the Exchange Act and Rule 13d–5(b)(1) thereunder, and that the Egghead holdings of all the defendants, when aggregated, exceeded 10% of the company's stock." *Id.*

■ Following the filing of a Rule 12(b)(6) motion, the district court:

ruled that where an investment adviser held shares of a corporation for customers, in the ordinary course of business, having acquired the shares without intent or effect of influencing control over the management of the corporation, those shares would not be deemed to be beneficially owned by the investment adviser in determining whether 10% beneficial ownership was established.

*Egghead.com,* 340 F.3d at 83. However, "[b]ecause the district court could not determine from the papers whether the Egghead securities held by the Investment Advisers were acquired with intent to influence control over Egghead, it directed trial of that question." *Id.* A jury then determined that "the shares in question were acquired in the ordinary course of business and without a control purpose." 340 F.3d at 84–85. Thus, far from suggesting that defendants are entitled to Rule 12(b)(6) relief, *Egghead.com* arguably suggests the opposite: where the question of the intent to acquire control is at issue, as is very much the case here, a motion to dismiss does not provide the appropriate

vehicle for its resolution. *See* Compl. ¶ 14; *Greenfield*, 213 F.Supp.3d at 517, 2016 WL 5793416, at *6 ("Plaintiff's allegations permit the inference that Cadian Capital did not hold Infoblox stock 'for the benefit of third parties,' as required by the RIA Exemption."). Such is the case here.

In further support of its motion to dismiss, Master Fund claims that it cannot be considered a "beneficial owner" as defined under the regulations because it has divested itself of the voting rights of the shares. *See* DE 34–1 at 14. Even assuming, *arguendo*, that the Court could consider the extrinsic factual materials evidencing the purported divestiture of voting rights on a Rule 12(b)(6) motion, which it cannot, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154–55 (2d Cir. 2002) (extrinsic materials must be disregarded or the motion converted to summary judgment), the argument fails.

In *Huppe v. WPCS Intern. Inc.*, 670 F.3d 214, 221 (2d Cir. 2012), the Second Circuit rejected an argument "that the limited partners' delegation of exclusive power to vote and dispose of the Funds' portfolio securities to their respective general partners … precludes the Funds, who possessed merely an economic interest in the WPCS's shares, from being ten percent holders under the SEC's rules." In affirming a grant of summary judgment in favor of plaintiff, the Circuit observed that "attribution of beneficial ownership to the entity does not mean that the individuals who make voting or investment decisions on behalf of the entity are not also beneficial owners of the securities." *Huppe*, 670 F.3d at 221–22 (quoting Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* 134–35 (§ 2.03[5][f]) (3d ed.2008)). Similarly, on a motion to dismiss, Judge Ramos rejected almost the precise argument made by defendants here:

The Court recognizes that there is guidance suggesting that a party which has delegated its authority to vote or manage stock to an independent investment advisor shall no longer be considered a beneficial owner of that stock. However, it is not necessarily the case that a party which has executed a contract purporting to delegate such authority has effectively done so. *See Greenberg v. Hudson Bay Master Fund Ltd.*, No. 14 Civ. 5226(DLC), 2015 WL 2212215, *8 (S.D.N.Y. May 12, 2015) (citing 17 U.S.C. § 240.13d–3(a)) ("The regulations contemplate that a purchaser may not avoid Section 16(b) liability simply by delegating voting and investment authority to a third party."). Indeed, "[a]n entity may be the beneficial owner of securities even when it only indirectly shares or possesses voting and investment power." Id. (citing 17 U.S.C. § 240.13d–3(a)) (emphasis added). In spite of the IMAs, Plaintiff contends that the Investment Funds in fact retained some measure of control over Infoblox stock.

*Greenfield*, 213 F.Supp.3d at 515, 2016 WL 5793416, at *4. This analysis applies with equal force to the instant matter.

In sum, then, accepting the allegations here as true, which the Court must for the purposes of a motion to dismiss, the Complaint states a claim upon which relief may be granted. Thus, defendants' motion under Rule 12(b)(6) must be denied.

**Summary Judgment**

 As noted, in response to defendants' motion for summary judgment, plaintiff has responded with an affidavit under Rule 56(d) (formerly Rule 56(f)) asserting a need for discovery in connection with the motion. Regarding that rule, the Second Circuit has held that:

when a party facing an adversary's motion for summary judgment reasonably

advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). Accordingly, we have held that summary judgment should only be granted if "after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.; accord Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("Under Rule 56(f), summary judgment may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition. The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment"). *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303–04 (2d Cir. 2003) (alterations omitted). This is not "the rarest of cases" warranting such treatment. *Trebor Sportswear Co.*, 865 F.2d at 511. To the contrary, in this case, defendants created this issue by obtaining a discovery stay pending resolution of this motion, and would now have the Court deny plaintiff an opportunity to discover facts necessary to oppose summary judgment. To whipsaw the plaintiff in this manner seems particularly inappropriate given that defendants' application is predicated on an affirmative defense re-

quiring scrutiny of the intent behind and purpose of complex financial transactions and legal agreement. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984) ("The district court should resist drawing fact inferences in summary judgment situations, particularly where, as here, intent is at issue."). There is little temptation to draw any factual inferences relating to intent or purpose where the only evidence of such issues consists of a conclusory statement in a declaration by one defendant. In fact, even in their reply papers, the Raging Capital defendants have introduced facts that raise more questions about the nature of the underlying relationships. DE 34-20 ¶ 3 (Martin acknowledges that he serves as a director of Master Fund); *id.* ¶ 4 (Martin admits that he and members of his family own, directly and indirectly, significant interests in Master Fund).

Therefore, the motion for summary judgment is denied.

At the same time, the invocation of Rule 56(d) has the palliative effect of narrowing the scope of discovery by specifically identifying the areas remaining to be explored. As such, the parties are directed to submit a joint discovery plan within fourteen days of the date of this opinion so that this matter may be readied for trial.

## CONCLUSION

Based on the foregoing, the motions to dismiss and for summary judgment are DENIED. As discussed above, the parties are to submit a joint discovery plan within fourteen days of the date of this opinion. Furthermore, plaintiff's motion to lift the stay of discovery is DENIED as moot.