**HEUBLEIN, INC., Petitioner-Appellant,**

v.

**GENERAL CINEMA CORP.,**
**Respondent-Appellee.**

**No. 97, Docket 83–7279.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 19, 1983.

Decided Nov. 30, 1983.

Certiorari Denied Feb. 27, 1984.

See 104 S.Ct. 1416.

Thomas McGanney, New York City (White & Case, Margaret Murphy, Richard B. Sypher, New York City, of counsel), for petitioner-appellant.

Robert E. Zimet, New York City (Skadden, Arps, Slate, Meagher & Flom, Janice M. Lee, New York City, of counsel), for respondent-appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BRIEANT, District Judge.*

OAKES, Circuit Judge:

Petitioner-appellant Heublein, Inc., appeals from an order granting summary judgment in favor of respondent-appellee General Cinema Corp. entered by William C. Conner, Judge, United States District Court for the Southern District of New York, on March. 9, 1983. Heublein sued General Cinema under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b),[1] alleging that General unlawfully realized short-swing profits while a 10% shareholder of Heublein's predecessor, Old Heublein. We affirm, substantially on the decision below, 559 F.Supp. 692 (S.D.N.Y. 1983).

General Cinema began purchasing Old Heublein common stock in November, 1981. By February 3, 1982, General Cinema was the beneficial owner of approximately 9.7% of Old Heublein outstanding stock, a fact it revealed in its Schedule 13D statement filed with the Securities and Exchange Commission on that date. On February 19, 1982, Old Heublein sued General Cinema alleging, inter alia, that the latter's Schedule 13D fraudulently failed to disclose that General Cinema's real goal was to acquire control of Old Heublein. Despite the suit, General Cinema continued to purchase Old Heublein shares, such that by May, 1982, it owned roughly 16.2% of the outstanding shares.

Meanwhile, between April 29, 1982, and May 10, 1982, top executives of Old Heublein and General Cinema met to discuss the possibility of an "asset swap" which might avert the necessity of further litigation. In the course of negotiations, Old Heublein provided General Cinema with non-public information involving aspects of Old Heublein's operations. At the time of the disclosures, however, Old Heublein represented to General Cinema that none of the information supplied was material inside information.

After talks broke off, General Cinema resumed making purchases; ultimately, it owned approximately 18.9% of Old Heublein shares. On May 28, 1982, General Cinema amended its 13D filing to reflect its new position; the amendment also stated that General Cinema had no present intention to purchase any additional shares.

On July 9, 1982, Old Heublein and R.J. Reynolds Industries, Inc., began to discuss the possibility of merging their two

---

* Of the Southern District of New York, sitting by designation.

1. For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

15 U.S.C. § 78p(b).

businesses. On July 29, the boards of directors of a Reynolds subsidiary and Old Heublein approved such a merger. At a special meeting of Old Heublein shareholders on October 12, 1982, the merger was approved, General Cinema voting its shares in Old Heublein against the merger. That same day, pursuant to the terms of the merger, General Cinema's Old Heublein shares were automatically exchanged for Reynolds stock. Heublein alleges that upon this exchange, General Cinema realized nearly $74 million in profits on its $157 million investment in Old Heublein shares, and insists that $30 million of the profits is recoverable by Heublein as the product of an unlawful short-swing purchase and sale by a more than 10% beneficial owner. We do not agree.

Our affirmance is based on the grounds that, as a matter of law, no "sale" took place within the meaning of § 16(b). We believe that Judge Conner's decision below accurately states and applies the law of both the Supreme Court case, *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), and this circuit's decision in *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043 (2d Cir.1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975), and we find his well reasoned opinion persuasive. We pause to note only that neither the district court's opinion nor our own should be read to suggest that, in fact, General Cinema possessed no material inside information pertaining to Old Heublein or, more generally, that General Cinema's actions are beyond reproach, moral or legal. We read Judge Conner's opinion to mean that in the *class* of cases of which the present case is representative, where (1) an atmosphere of suspicion, if not hostility, characterizes relations between the two corporations, (2) the exchange of shares is "involuntary" in that it is effectuated pursuant to a merger over which the investing corporation exercised no control or influence, and (3) there is no likelihood of access to material inside information, § 16(b), the "paradigmatic strict liability statute," is inappropriate and will not apply. Note, *Exceptions to Liability Under Section 16(b): A Systematic Approach*, 87 Yale L.J. 1430, 1430 (1978).

■ Were Old Heublein in fact legally wronged by virtue of the fact, e.g., that it had held revelatory discussions with First Boston Corp. which subsequently became General Cinema's investment adviser, it might of course seek other relief. Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j)(b), for example, is addressed to fraudulent use of inside information. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). While we do not suggest in any way that the facts set out above make out a § 10(b) or Rule 10b–5 violation, we agree with the court below that § 16(b) was not intended to remedy all wrongs. In *Kern*, Justice White, in rejecting the appellant's contention that § 16(b) should necessarily apply to a transaction involving a defeated tender offer, stated that if there were "evils to be redressed by way of deterring those who would make tender offers, § 16(b) does not appear ... to have been designed for this task." 411 U.S. at 597–98, 93 S.Ct. at 1746–47. Whether the present case is best characterized as essentially analogous to those involving frustrated tender offers (as the appellee urges and the court below found, 559 F.Supp. at 703) or whether it is symptomatic of an increasingly common strategy "for achieving quick and substantial returns" (as the appellant argues, and as the district court, in fact, appeared to believe, 559 F.Supp. at 694) is of no immediate consequence. Paraphrasing Justice White, while there may be evils to be redressed arising out of this kind of corporate maneuvering, § 16(b) is simply not an antidote to all the ills that may plague the securities market.

Order affirmed.

VAN GRAAFEILAND, Circuit Judge, concurring:

I agree with the majority that Judge Conner's well-reasoned opinion accurately

states and applies the law of both *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), and *American Standard, Inc. v. Crane Co.,* 510 F.2d 1043 (2d Cir. 1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975). However, I part company with my colleagues when they profess to interpret Judge Conner's holding.

Judge Conner said:

Thus, under the instant facts, there exists nothing to suggest that General Cinema had access to material inside information. 539 F.Supp. at 705.

Judge Oakes says:

We pause to note only that neither the district court's opinion nor our own should be read to suggest that, in fact, General Cinema possessed no material inside information pertaining to Old Heublein or, more generally, that General Cinema's actions are beyond reproach, moral or legal.

One need only contrast the majority and dissenting opinions in *Kern* to appreciate that in "unorthodox" transactions, such as the one which gave rise to the instant litigation, there must be a showing of possible speculative abuse of inside information before section 16(b) liability will be imposed. Judge Conner correctly applied this rule when he held:

Because General Cinema had absolutely no control over the course of events chosen by Old Heublein's management, and because it was unlikely that General Cinema could have received any advance, inside information concerning these events, this is not the sort of transaction that could give rise to the type of speculative abuse against which § 16(b) is directed. Accordingly, the Court concludes that General Cinema's exchange of Old Heublein stock for Reynolds stock was not a "sale" under § 16(b) of the Act. 539 F.Supp. at 705.

To the extent that my colleagues affirm that holding, I concur.