06-3771-cv
Roth v. Perseus L.L.C.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

———————————

August Term, 2007

(Argued: December 20, 2007                                    Decided: April 10, 2008)

Docket No. 06-3771-cv

———————————

ANDREW E. ROTH, derivatively on behalf of
BEACON POWER CORPORATION,

*Plaintiff-Appellant,*

— v .—

PERSEUS, L.L.C., PERSEUS CAPITAL, L.L.C., PERSEUS 2000 EXPANSION, L.L.C., PERSEUS
INVESTORS GROUP, L.L.C., FRANK H. PEARL, JOHN DOES NOS 1-20, and BEACON POWER
CORPORATION

*Defendant-Appellees.*

———————————

Before:           KATZMANN, B. D. PARKER, RAGGI, *Circuit Judges*.

———————————

Appeal from a judgment of the United States District Court for the Southern District of New York (Patterson, *J.*) dismissing claims under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Affirmed.

_____

GLENN F. OSTRAGER, Ostrager Chong Flaherty & Broitman P.C., New York, N.Y. & Bragar Wexler & Eagel, P.C., New York, N.Y., *for Appellant* Andrew E. Roth

GERSON A. ZWEIFACH (George A. Borden, Rachel R. Shanahan, *on the brief*), Williams & Connolly LLP, Washington, D.C., *for Appellees* Perseus, L.L.C., Perseus Capital, L.L.C., Perseus 2000 Expansion, L.L.C., Perseus Investors Group, L.L.C., Frank H. Pearl, John Does Nos 1-20, and Beacon Power Corporation

BRIAN G. CARTWRIGHT (Alexander F. Cohen, Jacob H. Stillman, Allan A. Capute, *on the brief),* Securities and Exchange Commission, Washington, D.C., *Amicus Curiae in Support of Appellees*

.

_____

BARRINGTON D. PARKER, *Circuit Judge*:

Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), imposes strict liability on insiders, such as directors and holders of more than 10% of a company's securities, who realize short-swing profits. The Supreme Court has construed § 16(b) to reach directors by deputization, shareholders who exercise the power to appoint directors to the board of an issuer. *See Blau v. Lehman*, 368 U.S. 403, 409-10 (1962). In 1996, the Securities & Exchange Commission

promulgated Rule 16b-3(d) which exempts from the coverage of Section 16(b) transactions between an issuer and a director that are approved by the board of directors of the issuer or meet certain other conditions.[1] The SEC has construed Rule 16b-3(d) to cover directors by deputization. This appeal considers whether that construction is permissible; we conclude that it is.

**BACKGROUND**

Beginning in 1997, Perseus, L.L.C. ("Perseus") through various affiliates, invested in Beacon Power Corporation ("Beacon"). By virtue of these investments, Perseus appointed two directors to Beacon's board of directors who ostensibly represented the interests of Perseus and its affiliates. In 2005, two of those affiliates, Perseus 2000 Expansion, L.L.C. and Perseus Capital, L.L.C., acquired Beacon warrants and shares directly from Beacon. Later in 2005, Perseus Capital, L.L.C. distributed 7.5 million Beacon shares to its members (including Perseus Investors Group, L.L.C.) and those members, in turn, sold the shares. Andrew E. Roth, a Beacon shareholder, brought

---

[1]Rule 16b-3(d) states: "Acquisitions from the issuer. Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if: (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors; (2) The transaction is approved or ratified, in compliance with section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or (3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercise or conversion) or its underlying equity security.

a derivative action against Perseus, L.L.C. ("Perseus"), certain of its affiliated funds,[2] Beacon, and others under Section 16(b) to recover the short-swing profits the Defendants made on the sale of the Beacon shares.

The United States District Court for the Southern District of New York (Patterson, *J.*) dismissed Plaintiff's claims. *See Roth ex rel. Beacon Power Corp. v. Perseus, L.L.C.*, 05 Civ. 10466 (RPP), 2006 U.S. Dist. LEXIS 52321 (S.D.N.Y. July 28, 2006). The district court held that Defendants, as "directors by deputization" of Beacon who also held more than 10% of Beacon's securities, were not liable under Section 16(b) by virtue of Rule 16b-3(d)(1). 17 C.F.R. § 240.16b-3(d)(1)(2006); *Roth*, 2006 U.S. Dist. LEXIS 52321 at *24-33.

The district court noted that it is "the transaction originating with the issuer and the fiduciary duties placed on corporate directors that provide the necessary safeguards against abuse of insider information [and] [t]hat [] directors – whether by deputization or otherwise – may also be ten percent holders of the issuer's securities [without] diminish[ing] those duties." *Id*. at *31. Accordingly, it concluded that "extending the Rule 16b-3 exemption to cover directors who are ten percent holders would not hinder the policies underlying Section 16(b)." *Id*. at *32. Finally, the district court upheld Rule 16b-3(d) as a valid exercise of the SEC's rulemaking authority on the ground that "Section 16(b) expressly confers on the SEC the authority to enact rules or regulations exempting transactions from the reach of the statute as not comprehended within the purpose of the statute [and . . . ] the SEC's interpretations of Rule 16b-3 are not plainly erroneous or inconsistent

---

[2]Perseus Capital, L.L.C.; Perseus 2000 Expansion, L.L.C.; Perseus Investors Group, L.L.C.) (collectively referred to as the "Perseus Funds")

with the regulations." *Id*. at *33 (internal citations and quotation marks omitted). This appeal followed. We review the district court's decision *de novo*. *See Prot. & Advocacy for Persons with Disabilities v. Mental Health & Addiction Servs.*, 448 F.3d 119, 123 (2d Cir. 2006) ("questions of statutory interpretation and the appropriate level of deference to accord agency regulations [are] purely of law, subject to *de novo* review.") (internal citations and quotations omitted).

## DISCUSSION

Section 16(b) provides that officers, directors, and holders of more than 10% of the listed stock of any company are liable to the company for any profits realized from any purchase and sale or sale and purchase of such stock occurring within a period of six months.[3] *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 583-84 (1973). Rule 16b-3(d)(1) provides selective relief from Section 16(b)'s otherwise blanket ban on short-swing profits by exempting transactions between the issuer and an officer or director so long as the "transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors." 17 C.F.R. § 240.16b-3.

---

[3] Specifically, the relevant part of Rule 16b-3 provides that: "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act [15 USCS § 78c note]) involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months."

5

Roth's complaint alleged that the defendants collectively held more than 10% of Beacon's stock and constituted a "group" for purposes of Section 16(b).[4] Since no one contests the fact that the defendants constitute a "group," we will assume they are subject to Section 16(b) unless exempted by Rule 16b-3(d)(1). Roth contends that the Rule does not apply because it does not cover directors by deputization or officers and directors who hold more than 10% of an issuer's securities. Roth also claims that Rule 16b-3(d)(1) is invalid because when the SEC promulgated the rule it exceeded its statutory authority.

## I.

The Supreme Court adopted the "deputization" theory under Section 16(b) in *Blau*, 368 U.S. 403, indicating that an entity would count as a director under Section 16(b) if it "deputized" a person on the board of directors to act on its behalf. *See id*. at 409-10. The SEC has recognized that under the deputization theory "a corporation, partnership, trust or other person can be deemed a director for purposes of section 16 where it has expressly or impliedly 'deputized' an individual to serve as its representative on a company's board of directors." *Ownership Reports and Trading by Officers, Directors and Principal Stockholders*, Exchange

---

[4] "With respect to § 16, SEC Rule 16a-1(a)(1) provides that, '[s]olely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities,' the term 'beneficial owner' means, with exceptions not pertinent here, 'any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder.' 17 C.F.R. § 240.16a-1(a)(1)." *Roth v. Jennings*, 489 F.3d 499, 507 (2d Cir. 2007). Subsection 13(d)(3) states: "[w]hen two or more persons act as a . . .group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3).

Act Release 26333, 53 Fed. Reg. 49997, 50000 (Dec. 13, 1988).[5]

In adopting the 1996 version of Rule 16b-3(d) the SEC discussed its rationale, stating that:

> where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute. Based on its experience with the Section 16 rules, the Commission is persuaded that transactions between the issuer and its officers and directors that are pursuant to plans meeting the administrative requirements and nondiscrimination standards of the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 ("ERISA") or that satisfy other objective gate-keeping conditions, are not vehicles for the speculative abuse that Section 16(b) was designed to prevent.

Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-37260, 61 Fed. Reg. 30376, 30377 (June 14, 1996).

The SEC, in its *amicus* brief, argues that the rationale underlying its adoption of Rule 16b-3(d) applies to directors by deputization just as strongly as it does to directors. We agree because the SEC's rationale for Rule 16b-3(d)'s exemption primarily rests on the safety provided by the issuer's knowledge of its own affairs – a factor whose weight is unaffected by whether the person or entity on the other side of the transaction is a director by deputization rather than an officer or director.[6] Consequently, because we identify no plain error or inconsistency in the SEC's

---

[5] The  SEC as *amicus curiae* urges us to conclude that directors by deputization are entitled to the Rule 16b-3(d) exemption, a position recently adopted by the Ninth Circuit. *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 953 (9th Cir. 2006) ("Since directors by deputization are subject to § 16(b) liability, it should follow, without controversy, that they may also seek the protection of Rule 16b-3(d).").

[6] We need not decide here whether directors by deputization necessarily assume the same fiduciary duties as the directors they appoint. We conclude only that the SEC, in the exercise of

challenged interpretation of its own rule, we reject Roth's argument that Rule 16b-3(d) does not apply to directors by deputization. *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984); *Press v. Quick & Reilly, Inc.*, 218 F. 3d 121, 128 (2d Cir. 2000).

                                        II.

Section 16(b) liability extends to holders of more than 10% of a company's listed stock. Rule 16b-3(d) exempts certain transactions by officers and directors from Section 16(b) liability. However, the Rule does not expressly exempt entities whose liability under Section 16(b) results from their ownership of more than 10% of a company's listed securities.  Consequently, the question presented to us is whether holders of more than 10% of a company's listed stock who are also directors (including directors by deputization) qualify for Rule 16b-3(d)'s exemption.

The answer to this question requires interpreting Rule 16b-3(d).  In so doing, we defer to the SEC's interpretation of the Rule, including one articulated in its *amicus* brief, so long as the interpretation is not plainly erroneous or inconsistent with the law.  *See Auer*, 519 U.S. at 461-62 (agency interpretation of its own regulation controlling even if presented in *amicus* brief); *Chevron, U.S.A., Inc.*, 467 U.S. 837; *Press*, 218 F. 3d at 128 ("We are bound by the SEC's interpretations of its regulations in its *amicus* brief, unless they are plainly erroneous or inconsistent with the regulation[s]") (internal quotation marks omitted).

---

its enforcement expertise, could reasonably conclude that the fiduciary obligations of appointed directors were sufficient to guard against any risks posed by interpreting Rule 16b-3(d) to apply to directors by deputization.

In its *amicus* brief, the SEC maintains that the Rule 16b-3(d) exemption is available to a director or director by deputization that also holds more than 10% of the issuer's publicly traded shares. In support of its position, the SEC asserts that:

> The Commission's reasoning as to why Rule 16b-3(d) should apply to ten percent holders who are also officers or directors is apparent from the Adopting Release: as officers or directors, they are subject to the same fiduciary constraints placed on all officers and directors, and . . . [Rule 16b-3(d)'s] gatekeeping procedures. . . are no less effective simply because an officer or director also happens to be a ten percent holder."

This interpretation of Rule 16b-3(d) is not plainly erroneous or inconsistent with the law and therefore we defer to it in concluding that owning more than 10% of a company's listed stock does not strip an officer, director, or director by deputization of the protections otherwise afforded by Rule 16b-3(d).

## III.

Section 16(b) specifically provides that it shall "not be construed to cover . . . any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." Roth contends that Rule 16b-3(d) exceeds the authority granted to the SEC by Section 16(b) because the Commission only "has discretion to exempt transactions that do not give rise to speculative abuse, or where the possibility of speculative abuse is truly remote or theoretical" because "neither the statute nor the legislative history suggests that the SEC may exempt certain categories of insider trading in order to lessen the reporting burden." Appellants' Reply Br. at 4. Roth points out that the Supreme Court has stated that "Congress thought that all short-swing trading by directors and officers was vulnerable to

abuse because of their intimate involvement in corporate affairs," *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 253 (1976), and complains that the "SEC has no power to substitute its policy judgment as to the benefits and costs for the judgment made by Congress." Appellants' Reply Br. at 5.

The defendants and the SEC dispute this proposition and assert that the "unfairness" Congress intended to remedy through Section 16(b) arose "when insiders trade in the market with [outside] investors who do not have access to information" and that "such unfairness does not typically exist when [as is the case for exempted Rule 16b-3(d) transactions] the insiders of an issuer trade with the issuer." *See Dreiling*, 458 F.3d at 945 ("We agree with the district court that the SEC had authority to adopt Rule 16b-3(d)").

The question for us is whether the transactions exempted by Rule 16b-3(d) are "comprehended within the purpose of [Section 16(b)]." The SEC claims that its opinion on this issue is entitled to deference under *Chevron* because Congress left a gap for the agency to fill when it enacted Rule 16b-3(d) and the SEC's expertise makes it best-suited to make the policy choices required to do so. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps, the Court [in *Chevron*] explained, involves difficult policy choices that agencies are better equipped to make than courts.").

Congress clearly left open a "gap" in Section 16(b) for the SEC to fill when it stated that "[t]his subsection shall not be construed to cover any . . . transaction or transactions which the

Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *See also Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 208 (2d Cir. 2006) ("Congress explicitly delegated to the Commission the policymaking authority to exempt certain transactions as not comprehended within the purpose of [Section 16(b)].") (internal quotations omitted). Furthermore, the SEC's expertise in this area is obvious. *See At Home Corp. v. Cox Commc'ns, Inc.*, 446 F.3d 403, 409 (2d Cir. 2006) (describing SEC as "an agency uniquely experienced in confronting short-swing profiteering"). Therefore, we give *Chevron* deference to the SEC's opinion on whether the transactions exempted by Rule 16b-3(d) are comprehended within the purpose of Section 16(b). The SEC's views are entitled to "controlling weight" unless the regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc.*, 467 U.S. at 843-44. The SEC's position suffers from none of these flaws.

In *Kern County Land Co.*, 411 U.S. at 585, the Supreme Court identified the purpose of 16(b) as "preventing the unfair use of information which may have been obtained by [a statutory insider]" and determined that the law sought to "protect[] the public 'by preventing directors, officers, and principal stockholders of a corporation . . . from speculating in the stock *on the basis of information not available to others*.' S. Rep. No. 792, 73d Cong., 2d Sess., 9 (1934)." *Id.* at 592 (emphasis added). This focus on preventing insiders from taking advantage of "information not available to others" supports the SEC's contention that issuer-insider transactions, where both parties have the benefit of "insider" information, are not comprehended within the purpose of Section 16(b). The SEC's logic is further supported by the Supreme Court's decision in *Foremost-McKesson, Inc.*, 423 U.S. at 243, which also emphasized Congressional focus on the

problem of informational asymmetry. *See id.* ("Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well informed investors."). As the SEC's view is well supported by the Supreme Court's analysis of Congressional intent, we give it "controlling weight" and hold that the SEC's promulgation of Rule 16b-3(d) lies within the authority granted to the Commission by Section 16(b).

## III. CONCLUSION

The judgment of the district court is AFFIRMED.